UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CARMEN ELENA MONTEILH
CHAVARRIA,

    Plaintiff,

v.                                            CASE NO. 8:17-cv-2229-T-23AEP

INTERGRO, INC., et al.,

    Defendants.
_____/

# **ORDER**

Carmen Elena Monteilh Chavarria sues (Doc. 49) Intergro, her former employer; Timothy Dolan, Intergro's owner; and Felix Renta, Intergro's chief financial officer. In Count I, Chavarria alleges that the defendants negligently selected a whitewater rafting trip as a company "team-building exercise" and negligently equipped Chavarria for the rafting trip. In Count II, Chavarria alleges that Intergro breached Chavarria's employment contract by failing to pay severance compensation required by a Honduran labor statute. Intergro[1] moves (Doc. 52) to dismiss Count II under Rule 12(b)(6), Federal Rules of Civil Procedure, and the defendants move (Doc. 69) for summary judgment on Count I. Chavarria opposes

---

[1] Although Dolan and Renta remain defendants in Chavarria's negligence claim, the July 16 order dismisses Dolan and Renta from Chavarria's breach of contract claim. (Doc. 48 at 6–8)

(Docs. 56, 70) both motions and moves (Doc. 67) for summary judgment on Count II. Also, the parties appeared for a hearing on February 12, 2019.

**BACKGROUND**

The proper inquiry under Rule 12(b)(6), Federal Rules of Civil Procedure, is whether the complaint's allegations of fact, assumed true and construed in the light most favorable to the plaintiff, state a claim for relief. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). Accordingly, to resolve Intergro's motion to dismiss, the "background" section of this order includes only the facts alleged in the complaint.

Chavarria, a Honduran national, contracted with Intergro, a Florida corporation, to provide accounting services in La Lima, Honduras. Chavarria alleges that Intergro arranged a whitewater rafting trip as part of an employee "team-building exercise." Soon after the rafting trip, doctors allegedly discovered a small stone lodged in Chavarria's eye. Chavarria's condition resulted in a series of surgeries, after which she received a diagnosis of 75% vision loss in her right eye. More than a year after the trip, Intergro terminated Chavarria's employment.

Suing "[u]nder Florida [c]ommon [l]aw" (Doc. 1 at 8, 10), Chavarria's original complaint alleged that "Honduran law requires the payment of certain benefits upon termination of employment"; that Intergro terminated Chavarria's employment; and that Intergro — by failing to pay "certain benefits" — breached the employment contract. (Doc. 1 at 8–10) The defendants moved (Doc. 13) for a more definite

statement, and Chavarria permissively amended (Doc. 15) the complaint. The amended complaint was almost identical to the original complaint, but Chavarria removed Spanish-language attachments — including the employment contract — and removed from her allegations every mention of those attachments.

In April 2018, almost six months after the amended complaint, Chavarria moved to "establish[] Honduran Law as controlling all of [Chavarria's] claims." (Doc. 39 at 7) A July 16, 2018 order (Doc. 48) concludes that Chavarria "waived her right to assert that Honduran law governs her claims" because Chavarria had repeatedly alleged that Florida common law governed her claims. Consequently, the July 16 order directs Chavarria to amend the complaint to clarify the allegation that "Intergro breached the contract by failing to pay [Chavarria] the benefits that were due under same pursuant to Honduran law."

In the second amended complaint (Doc. 49), Chavarria alleges that the parties formed an employment contract "under Honduran law" (Doc. 49 at ¶ 30); that the parties contracted for an indefinite time (Doc. 49 at ¶ 44); that the contract contravened Article 120, of the Honduran Labor Code[2] by failing to provide for severance compensation (Doc. 49 at ¶¶ 31, 34); and that the operation of Honduran law "included" in the contract a term that required severance compensation.

---

[2] According to the certified translation, Article 120, Honduran Labor Code, states: "If the contract of employment for an indefinite period concludes due to unjustified dismissal . . . or another [cause] other than the will of the worker, the employer shall pay him a severance assistance . . . ." (Doc. 49-10 at 12)

(Doc. 49 at ¶ 37) Further, Chavarria alleges that Intergro terminated her employment (Doc. 49 at ¶ 45) and materially breached Chavarria's employment contract by failing to pay Chavarria the required severance compensation. (Doc. 49 at ¶ 41)

## DISCUSSION

### Intergro's Motion to Dismiss Count II (Breach of Contract Under Florida Law)

The parties dispute the effect of the July 16 order. (Doc. 48 at 2) Chavarria argues that the July 16 order obligates her to state a claim under the contract and that the contract, if construed to "include[]" "missing implied terms and conditions that are required under Honduran law," entitles her to relief. (Doc. 56 at 6–7) Intergro argues that the July 16 order bars any claim that alludes in any manner to Honduran law. (Doc. 52 at 5)

The introduction of Chavarria's original complaint stated:

> This is an action for personal injury brought under Florida Stat. §768.041 - §768.81 et seq. ("Negligence"), for the Intentional Infliction of Emotion Distress brought under Florida common law ("IIED"), and for breach of contract pursuant to non-payment of employment termination benefits under Florida common law.

(Doc. 1 at ¶ 1)

After the defendants moved for a more definite statement, Chavarria permissively amended the complaint. The introduction of Chavarria's amended complaint stated:

> This is an action for personal injury brought under Florida Stat.
> §768.041 - §768.81 et seq. ("Negligence"), for the Intentional Infliction
> of Emotion Distress brought under Florida common law ("IIED"),
> and for breach of contract pursuant to non-payment of employment
> termination benefits under Florida common law."

(Doc. 15 at ¶ 1)

Chavarria's complaints state specifically that the claims alleged are based on Florida law: a negligence claim based on Florida tort law and a breach of contract claim based on Florida contract law. Accordingly, the July 16 order concludes that Chavarria "waived her right to assert that Honduran law governs her claims" because she had repeatedly alleged that Florida common law governed her claims.

In the introduction, Chavarria's second amended complaint states:

> This is an action for personal injury brought under Florida Stat.
> §768.041 - §768.81 et seq. ("Negligence") and for breach of contract
> pursuant to non-payment of employment termination benefits under
> Florida common law.

(Doc. 49 at ¶ 1)

Although the July 16 order bars Chavarria from renouncing her consistent reliance on Florida law as the basis for her claims, the July 16 order says nothing to prohibit Chavarria from establishing that Honduran law inserts into her employment contract a term originating in a Honduran statute and requiring severance compensation. In other words, the July 16 order confirms that Chavarria waived a claim that Honduran law — not Florida common law — governs her claim. **But the July 16 order leaves available a claim, based on Florida contract law, for breach of**

**a contract term originating in a Honduran statute and inserted into the contract by Honduran law**.  Chavarria is free to establish that Honduran law inserted into her employment contract a term that requires severance compensation.  If the contract contains a term requiring severance compensation and if the term was breached, Chavarria can allege a breach of contract governed by Florida law, which is the claim Chavarria has pleaded (three times).

An analogy between the Fair Labor Standards Act in the United States and Article 120 of the Honduran Labor Code effectively illustrates Chavarria's pleading quandary.  If an employer in the United States, for example, fails to pay overtime, the aggrieved employee can sue the employer for a violation of the overtime provision of the FLSA.  The employee does not sue for breach of contract because the FLSA imposes on the employer an absolute duty to pay overtime, regardless of — or even contrary to — any provision of the contract.  The FLSA does not insert into every employment contract a term that requires the payment of overtime; the FLSA creates a statutory obligation — not a contractual obligation — to pay overtime.

In the second amended complaint, Chavarria alleges that Article 120, Honduran Labor Code — which states that an employer "shall pay" an employee a severance if the employment, contracted for an indefinite time, concludes for a reason "other than the will of the worker" (Doc. 49-10 at 12) — was "included in [Chavarria's employment] Contract [by operation of law]." (Doc. 49 at ¶ 37)  The

allegation is an unsubstantiated legal conclusion because Chavarria identifies neither a contract term nor a Honduran Labor Code provision nor anything else that inserts into Chavarria's employment contract a term requiring payment of severance compensation.

Chavarria alleges that Article 3, Honduran Labor Code, "include[s]" in Chavarria's employment contract Article 120's severance provision. (Doc. 47 at ¶ 37) But Article 3 states only that "acts or practices that imply resignation, diminution, or distortion of the rights" created by the Honduran Labor Code are "null." (Doc. 49-10 at 3) Article 3 does not insert into every employment contract either the Honduran Labor Code in general or Article 120 in particular.

Nor does Article 120, which states that an employer "shall pay" a severance, require that every employment contract formed under Honduran law must include a term that requires severance compensation. By the statute's plain text, Article 120 neither inserts nor even demands any particular contract term. Instead, like the FLSA, Article 120 requires — statutorily and not contractually — the payment of severance compensation to certain terminated employees. If the severance compensation remains unpaid, the statute, not the employment contract, is violated and the aggrieved employee, if a private right of action exists, can sue for a violation of the Honduran statute — not for a breach of the employment contract.

Because Chavarria sues for breach of contract but fails to allege the existence of a term in her contract that requires severance compensation, Chavarria fails to state a claim for breach of her employment contract.

> **Intergro, Dolan, and Renta's Motion for Summary Judgment on Count I (Negligence Under Florida Law)**

Chavarria alleges that the defendants owed a "duty of care to equip" Chavarria for whitewater rafting. (Doc. 49 at ¶ 51) Specifically, Chavarria alleges that the defendants owed Chavarria a duty to equip her with eye protection, the absence of which allegedly permitted Chavarria's injury. However, the responsibility to provide protective equipment belonged entirely to the rafting company, an independent contractor. *McCall v. Alabama Bruno's*, 647 So.2d 175, 177 (Fla. 1st DCA 1994) ("Florida follows the general rule that the employer of an independent contractor is not liable for the contractor's negligence because the employer has no control over the manner in which the work is done"). Although an exception exists if the employer negligently selected the independent contractor, *McCall*, 647 So.2d at 177, the record shows that the former general manager of Serproma, S.A., Marcio Paz, "organized" the rafting trip, which included Paz's hiring the rafting company. (Doc. 43-6 at 35:23–25, 71:14–74:10; Doc. 49-12 at ¶ 6; Doc. 68-3 at 3; Doc. 68-4 at 3; Doc. 68-5 at 21; Doc. 70-4 at 140:5–9)

And because Paz, rather than Dolan or Renta, "organized" the trip, Chavarria fails to substantiate her allegation that Dolan and Renta owed Chavarria "a duty to

select appropriate activities for a corporate retreat taking into consideration the age range and physical fitness of their employees." (Doc. 49 at ¶ 51)  A duty of care exists if a defendant's conduct creates a "foreseeable zone of risk." *Kaiser v. Kolb*, 543 So.2d 732, 725 (Fla. 1989).  In fact, neither Dolan nor Renta knew that Paz had arranged a whitewater rafting trip.  (Doc. 43-6 at 35:23–25, 71:14–74:10; Doc. 68-4 at 3)  Accordingly, neither Dolan nor Renta owed Chavarria "a duty to select appropriate activities for a corporate retreat." (Doc. 49 at ¶ 51)

Additionally, a parent corporation is not liable for a subsidiary's tort. *Am. Int'l Group, Inc. v. Cornerstone Business, Inc.*, 872 So.2d 333, 336 (Fla. 2d DCA 2004) (holding that a parent corporation and its subsidiary are "separate and distinct legal entities" and "not . . . interchangeable for purposes of . . . defending a lawsuit"); *Unijax, Inc. v. Factory Ins. Ass'n*, 328 So. 2d 448, 452–53 (Fla. 1st DCA 1976) (adopting the holding of *Gordon Chemical Co. v. Aetna Cas. & Sur. Co.*, 266 N.E. 632, 655 (Mass. 1971), and concluding that separate legal entities' common management or common ownership "does not create a single unit or justify a disregard of separate corporations" unless the distinction "is a sham, or is used to perpetuate deception or defeat a public policy").  The "team-building exercise," which included the rafting trip, was a Serproma event.  (Doc. 43-6 at 73:22–74:6; Doc. 49-12 at ¶ 6; Doc. 68-3 at 3; Doc. 68-4 at 3; Doc. 70-4 at 71:8–13, 89:21–23, 90:8–10, 91:13–15, 96:11–12, 97:6–17, 187:1–188:15)  The relation between Serproma and Intergro is unclear, but the record falls dramatically short of the record necessary — under any theory — to

disregard the distinct corporateness of Intergro and Serproma.[3]  In any event, neither in the original complaint nor in the amended complaint nor in the second amended complaint has Chavarria pleaded a basis — or the facts to support a basis — for disregarding the distinct corporateness of Intergro and Serproma.  The "single integrated enterprise" argument (an inapplicable notion borrowed awkwardly from labor law) appears for the first time in Chavarria's response (Doc. 70 at 9) to the defendants' summary judgment motion.

## CONCLUSION

Intergro's motion (Doc. 52) to dismiss Chavarria's claim under Florida law for breach of contract (Count II of the second amended complaint) is **GRANTED**, and Chavarria's breach of contract claim is **DISMISSED**.  Chavarria's motion (Doc. 67) for summary judgment on Count II is **DENIED** as moot.  The defendants' motion (Doc. 69) for summary judgment on Chavarria's claim under Florida law for negligence (Count I of the second amended complaint) is **GRANTED**.  The clerk is

---

[3] According to Chavarria, Intergro and Serproma are "affiliated companies" that both "belong to . . . Dolan." (Doc. 70-4 at 61:25–62:17) Chavarria testifies that she worked at Dolan's request for both Intergro and Serproma, and Dolan does not dispute that Chavarria worked for both Intergro and Serproma. (Doc. 43-6 at 25:4–16, 73:17–20; Doc. 70-4 at 52:24–53:15) However, Dolan testifies that Intergro is the "primary customer" of Serproma's tomato stakes. (Doc. 43-6 at 52:10) Dolan claims to be "an owner" of "a share" of Serproma and, although purporting to not know whether he owns a controlling share of Serproma, claims to wield veto power over Serproma business decisions. (Doc. 43-6 at 18:3–8, 31:16–33:5) Serproma's general manager reports to Dolan, but Intergro and Serproma are managed by different staffs. (Doc. 43-6 at 30:11–31:16) Intergro owns no share of Serproma. (Doc. 43-6 at 18:9–14) In affidavits, Paz asserts that Serproma is a subsidiary of Intergro, that sales to Intergro represented almost all of Serproma's business, and that Dolan and Renta are "senior executives of Serproma and Intergro. (Doc. 49-12 at ¶ 4; Doc. 70-3 at ¶¶ 2, 6) Also, Intergro's employees in Honduras, although separated from Serproma's employees, worked in the same building as Serproma's employees. (Doc. 43-6 at 20:15–21:2)

directed to enter judgment for Intergro, Inc., Timothy Dolan, and Felix Renta and against Carmen Elena Monteilh Chavarria on both counts and to **CLOSE** the case.[4]

ORDERED in Tampa, Florida, on March 15, 2019.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[4] During the February 12, 2019 hearing and in a notice (Doc. 81), Chavarria's counsel announced the possibility of an action in Honduras for breach of the Honduran statute requiring severance compensation.